UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald A. DAVIS, Defendant–Appellant.

No. 90–3163.

United States Court of Appeals,
Tenth Circuit.

March 29, 1991.

---

Tanya J. Treadway, Asst. U.S. Atty. (Lee Thompson, U.S. Atty., with her on the brief), Kansas City, Kan., for plaintiff-appellee.

Marilyn M. Trubey, Asst. Federal Public Defender, Topeka Kan. (Charles D. Anderson, Federal Public Defender, Wichita, Kan., with her on the brief), for defendant-appellant.

Before BALDOCK and BRORBY, Circuit Judges, and ANDERSON, District Judge.*

BALDOCK, Circuit Judge.

Defendant-appellant, Ronald A. Davis, was convicted by a jury of distribution of heroin, 21 U.S.C. § 841(a)(1), and two counts of using a telephone to facilitate the distribution of heroin, 21 U.S.C. § 843(b). Defendant appeals, arguing that the district court erred: (1) in not ruling that his prior Kansas state court conviction was unconstitutional and thus inadmissible for purposes of impeachment under Fed.R. Evid. 609(a)(1); (2) in admitting the prior conviction for impeachment at trial without weighing its probative value against its prejudicial effect pursuant to Fed.R. of Evid. 609(a)(1); (3) in admitting duplicate tapes of his conversations with an informant and allowing the jury to view transcripts of the conversations; (4) in denying his motion for judgment of acquittal on the telephone use counts because 21 U.S.C. § 843(b) does not encompass telephone calls *received* by a defendant; and (5) by constructively amending the indictment with its jury instructions. We affirm.

### I.

Our jurisdiction over this case arises in a peculiar manner. At defendant's original sentencing hearing on October 21, 1988, the court advised him of his right to appeal or to seek leave to appeal in forma pauperis. *See* Fed.R.Crim.P. 32(a)(2). Defendant and retained counsel then left the courtroom, conferred, and decided to seek leave to appeal in forma pauperis. Counsel returned and advised the court of the deci-

---

* The Honorable Aldon J. Anderson, Senior United States District Judge for the District of Utah, sitting by designation.

sion; however, the marshal removed defendant from the courthouse before defendant could reappear. Counsel apparently failed to investigate the matter, and defendant, relying on counsel, failed to file a timely notice of appeal pursuant to Fed.R.App.P. 4(b). On January 2, 1990, defendant filed a motion pursuant to 28 U.S.C. § 2255, requesting resentencing so that he could perfect an appeal. The court granted the motion, vacated its October 21, 1988 judgment, and resentenced defendant on May 18, 1990, to the same sentence. Thereafter, defendant filed a timely notice of appeal, and the matter is now before us.

■■■■ Although a timely notice of appeal is "mandatory and jurisdictional," *United States v. Robinson*, 361 U.S. 220, 224, 80 S.Ct. 282, 285–86, 4 L.Ed.2d 259 (1960); *United States v. Avery*, 658 F.2d 759, 761 (10th Cir.1981), we hold that the district court correctly resentenced defendant to enable him to perfect an appeal because he was denied effective assistance of counsel at the original sentencing hearing. "[A] defendant is denied effective assistance of counsel if he asks his lawyer to perfect an appeal and the lawyer fails to do so by failing to file a brief, a statement of appeal, or otherwise." *Abels v. Kaiser*, 913 F.2d 821, 823 (10th Cir.1990) (citing *Evitts v. Lucey*, 469 U.S. 387, 389, 105 S.Ct. 830, 832–33, 83 L.Ed.2d 821 (1985) and *Rodriquez v. United States*, 395 U.S. 327, 329, 89 S.Ct. 1715, 1716–17, 23 L.Ed.2d 340 (1969)). The proper remedy is a resentencing to enable defendant to perfect an appeal. *Abels*, 913 F.2d at 823. Resentencing of defendant was proper because the record established that he instructed counsel to perfect an appeal and counsel did not. We have jurisdiction because defendant filed a timely notice of appeal after the valid resentencing.

## II.

Defendant contacted Stephen Hilliard, an FBI informant, in September 1985, and sold

him four grams of heroin. During the course of the transaction, Hilliard telephoned defendant twice and met with him several times to arrange transfer of the heroin and payment. The FBI tape-recorded these telephone conversations and meetings.

■■■■ Prior to the trial, defendant filed a motion in limine,[1] requesting the court to rule that a prior state court conviction was unconstitutional and therefore inadmissible for purposes of impeachment at trial. Fed. R.Evid. 609(a)(1). The prior conviction was from the district court of Johnson County, Kansas, where defendant pled guilty in 1979 to one count of possession with intent to sell marijuana and one count of possession of cocaine. Defendant contends that the state court's journal entry for the resulting conviction did not sufficiently enumerate the rights waived and the elements of the offenses charged. He further contends that the government did not make the required "affirmative showing" that he knowingly and voluntarily waived his constitutional rights prior to his state court guilty plea. *See Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969). An enumeration of the specific rights waived and elements charged, however, is not required. *Sena v. Romero*, 617 F.2d 579, 580 (10th Cir.1980); *Stinson v. Turner*, 473 F.2d 913, 915 (10th Cir.1973). The record need only show a voluntary and intelligent plea. *Sena*, 617 F.2d at 580. In denying the motion in limine, the district court determined that the journal entry on its face showed a voluntary and intelligent plea. We agree, as the entry explicitly states that the sentencing court insured that the plea was given voluntarily and intelligently:[2]

> The Court informs the defendant of the consequences of his plea and of the maximum penalty provided by law.
>
> The court, after determining that the plea was freely and voluntarily made

---

1. Defendant termed it a motion for protective order.

2. The entry complies with Kan.Stat.Ann. § 22–3210, which was enacted to ensure that

Kansas courts comply with the *Boykin* standard. *See Trotter v. State*, 218 Kan. 266, 268–269, 543 P.2d 1023, 1027 (1975).

with an understanding of the nature of the charge and the consequences of the plea and that there is a factual basis for the plea, adjudges the defendant guilty as charged....

Appellant's Brief, Addendum.

The district court did not abuse its discretion in denying the motion in limine. *See United States v. Lamb,* 575 F.2d 1310, 1314 (10th Cir.) (abuse of discretion standard applies to 609(a) evidentiary rulings), *cert. denied,* 439 U.S. 854, 99 S.Ct. 165, 58 L.Ed.2d 160 (1978).

 Defendant next contends that the court committed plain error in admitting the prior conviction for impeachment purposes without weighing its probative value against its prejudicial effect. Fed.R.Evid. 609(a)(1). Yet defendant, on direct examination, proffered the prior conviction as evidence. Rec. vol. III at 227. He apparently hoped to demonstrate his innocence in this case by pointing to the fact that he chose to go to trial; whereas, in the prior state court proceeding he was guilty and so pled. *Id.* As we do not believe it is incumbent upon the trial court to save defendant from his own trial tactics, we find no error.[3] Furthermore, given the broad parameters afforded trial counsel in tactical decisions, we do not find ineffective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064–66, 80 L.Ed.2d 674 (1984) ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....").

 Defendant next contends that the court abused its discretion in admitting duplicate tape recordings of defendant's conversations with Hilliard, the informant, because the government did not adequately explain why it presented duplicates rather than originals. Reviewing the trial transcript, however, we find that the government presented three witnesses to lay foundation for the duplicates: (1) Agent Buettgenbach testified that it is standard practice to produce duplicates of the type of tape used to record defendant because the duplicates, in cassette form, are easier to transcribe and play back, rec. vol. III at 35; (2) Leanna Brown, the person who recorded the duplicates, testified as to their accuracy, *id.* at 55–63; and (3) Hilliard, who participated in the taped conversations, also testified as to the accuracy of the duplicates. *Id.* at 90, 97. Additionally, Buettgenbach and Brown testified as to the control of the tapes after they were recorded. *Id.* at 35, 36, 55–63. "[W]e will not upset the judge's admission of a recording unless the foundation was clearly insufficient to insure the accuracy of the recording." *United States v. Jones,* 730 F.2d 593, 597 (10th Cir.1984). In light of the testimony of the two government witnesses and the informant who participated in the taped conversations, we cannot find that the district court abused its discretion in admitting the duplicate tapes.

 Defendant next contends that the government prepared two transcripts of one of his conversations with informant Hilliard: one of which was provided before trial and on which he prepared his defense; and the other of which the government used at trial. On the first transcript was the term "tryplephene." Defendant claims that he prepared his defense using this transcript, testifying that he was trying to dupe Hilliard by selling him a fictional substance called "tryplephene." The second transcript, in the same location, contains the word "triple-beam," which refers to a scale commonly used to weigh narcotics. Defendant contends he was prejudiced by

---

3. Even assuming error, such error would not be reversible because it did not rise to level of plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Orr,* 864 F.2d 1505, 1508 (10th Cir. 1988) (plain error is the standard of review when defendant does not object at trial and was not precluded from objecting). The plain error standard calls for a determination, in light of the entire record, of whether the error was sufficient to "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985); *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). Clearly, it was not plain error for the court to fail to weigh the probative value of the prior conviction against its prejudicial effect when the defendant, of his own accord, raised the issue as evidence of his innocence.

the second transcript because, had he known of its existence before trial, he would not have testified that he was trying to dupe Hilliard with an imaginary substance; therefore, his prior conviction would never have been placed before the jury. This argument is meritless.

Early in the trial, under direct examination, Hilliard testified that he, upon request of the government, had made changes in certain portions of the transcript to reflect accurately his conversations with defendant. Rec. vol III at 92, 97. Later, during direct examination, he testified regarding the term "triple-beam." *Id.* at 101. This testimony, early in the trial, put defendant on notice as to the discrepancy between the two transcripts. Had defendant wished, he could have inquired into the discrepancy at this point on cross examination. *See, e.g., United States v. Devous,* 764 F.2d 1349, 1353–54 (10th Cir.1985). Instead, as a matter of trial tactics, he chose to testify and explain the transcript. This tactical decision cannot be turned into an abuse of discretion by the court. "The admission of transcripts to assist the trier of fact ... lies within the discretion of the trial court." *Id.* at 1353. When considering that the transcripts were authenticated by informant Hilliard's testimony and that the discrepancy was fully aired before the jury during defendant's testimony, rec. vol. III at 233–241, it is evident that the trial court did not abuse its discretion in admitting the transcripts. Moreover, the court gave a proper cautionary instruction to the jury, telling them that the tapes were the true evidence and that the transcripts were to be used only for clarification. *Id.* at 92–93, 100. *See United States v. Lucero,* 601 F.2d 1147, 1149 (10th Cir.1979) (cautionary instruction regarding transcripts instrumental in finding that trial court did not abuse discretion). The district court did not err in admitting the transcripts.

Defendant next challenges the district court's denial of his motion for judgment of acquittal on the telephone counts, 21 U.S.C. § 843(b). Section 843(b) prohibits the knowing or intentional "use [of] any communication facility in committing or in causing or facilitating the commission of ... a felony...." At trial, the court instructed the jury that the government was "not required to prove that the defendant was the person who actually placed or made the telephone call" in order to meet its burden of proof on the § 843(b) counts. Rec. vol. I, doc. 43. Defendant argues that this was an incorrect interpretation of the statute, contending that the term "use," in § 843(b), does not encompass situations where the defendant *receives* the telephone call from a government informant.

The broad interpretation we have previously accorded § 843(b) undercuts defendant's argument. The statute encompasses any use of a communications facility that makes easier the commission of the underlying felony. *United States v. Watson,* 594 F.2d 1330, 1343 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). In this case, although the government informant placed the telephone calls, defendant made arrangements during those conversations to meet informant and sell heroin. Rec. vol. III at 89. This clearly facilitated defendant's distribution of heroin. Moreover, the Sixth Circuit has held that "[a] violation of § 843(b) may be found ... even when the defendant does not initiate the calls." *United States v. McLernon,* 746 F.2d 1098, 1107 (6th Cir. 1984). *See also United States v. Cordero,* 668 F.2d 32, 43 (1st Cir.1981) ("We are aware of no authority which suggests the term 'use' in the statute refers solely to 'placing' calls and leaves unpunished use of the telephone by the receiver of a call."). We agree. Accordingly we find that the district court correctly denied defendant's motion for judgment of acquittal on the telephone counts.

Finally, defendant argues that jury instruction number eight broadened or constructively amended the indictment. Specifically, the indictment charged defendant with using the telephone "in *facilitating* the knowing and intentional distribution of heroin," rec. vol. I, doc. 1 at 4–5 (emphasis supplied); whereas, the jury was instructed that the charged offense was using the

telephone "in *committing,* or in *causing* or in *facilitating* the offense of distributing ... heroin." Rec. vol. I, doc. 43 (emphasis supplied). Defendant asserts that the addition of the words "committing" and "causing" in the jury instructions caused him to be convicted of a crime for which he was not charged in the indictment.

We have consistently referred to the offense in § 843(b) as using a communication device to "facilitate" a drug felony transaction, implicitly recognizing that "facilitate" encompasses the terms "commit" and "cause." *See, e.g., United States v. Baggett,* 890 F.2d 1095, 1097–98 (10th Cir.1989); *United States v. McIntyre,* 836 F.2d 467, 473 (10th Cir.1987). *See also* Random House Dictionary of the English Language 690 (2d ed. unabr.) (To "facilitate" is "to make easier or less difficult; help forward (an action, a process, etc.)"). Defendant simply has failed to demonstrate how the addition of the words "committing" and "causing" in the jury instructions caused him to be convicted of a crime other than the crime charged in the indictment. *See United States v. Apodaca,* 843 F.2d 421, 428 (10th Cir.), *cert. denied,* 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988). "Our standard of review is ... whether the jury, considering the instructions as a whole, was misled." *United States v. Willis,* 890 F.2d 1099, 1105 (10th Cir.1989). In this case, we cannot say that the jury was misled, for the evidence was consistent with the charge in the indictment. The government presented evidence that defendant used the telephone to arrange for the time and place of heroin sales. Rec. vol. III at 89. This was consistent with the charge "facilitation" in the indictment, and "convictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment." *United States v. Miller,* 471 U.S. 130, 136, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99 (1985). *See also United States v. Peterman,* 841 F.2d 1474, 1478 (10th Cir.1988) (jury instruction broadened indictment, but there was no prejudice because the evidence at trial corresponded to the offense charged in the indictment), *cert. denied,* 488 U.S. 1004,

109 S.Ct. 783, 102 L.Ed.2d 774 (1989). Therefore, we hold that the trial court did not commit reversible error by adding the words "committing" and "causing" to the jury instructions.

AFFIRMED.